## LAWRENCE WAREHOUSE CO. v. DEFENSE SUPPLIES CORPORATION.

## CAPITOL CHEVROLET CO. v. SAME.
## McGREW v. SAME.

## DEFENSE SUPPLIES CORPORATION v. HENRY.
### No. 11418.

Circuit Court of Appeals, Ninth Circuit.
April 6, 1948.

As Amended on Denial of Rehearing
May 13, 1948.

200

For opinion of Circuit Court of Appeals and the District Court, see 164 F.2d 773, and 67 F.Supp. 16.

W. R. Wallace, Jr., W. R. Ray, and Williamson & Wallace, all of San Francisco, Cal., for appellant Lawrence Warehouse Co.

Morris Lavine, of Los Angeles, Cal., for appellant Capitol Chevrolet Co.

Theodore R. Meyer, Brobeck, Phleger & Harrison, David E. Lombardi, and R. L. Miller, all of San Francisco, Cal., for appellee Defense Supplies Corporation.

Before DENMAN, HEALY, and BONE, Circuit Judges.

DENMAN, Circuit Judge.

### Motion of Reconstruction Finance Corporation.

The Reconstruction Finance Corporation, purportedly joined by the Defense Supplies Corporation, moves to amend the complaint and judgment herein by substituting the Reconstruction Finance Corporation as plaintiff and judgment creditor and to substitute it as appellee in this Court.

The admitted facts are that Defense Supplies Corporation ceased to exist on July 1, 1945, by virtue of the Act of Congress of June 30, 1945, dissolving that corporation; that after it ceased to exist, the trial of the case in the District Court on which the subsequent judgment rests was continued by the filing on July 2, 1945, of a closing brief in the name of the defunct corporation; followed by the Court's order of submission of the trial on July 16, 1945; thereafter, on April 15, 1946, the judgment was entered for the non-existent corporation against certain defendants and against it as to one defendant; that thereafter the defunct corporation purported to appeal, and the judgment debtors appealed to this Court; thereafter, on September 16, 1946, over a year after its dissolution, the defunct corporation filed here its points and authorities on its purported appeal and briefed and argued it, and the judgment debtors did likewise; that thereafter, this Court affirmed the judgment in favor of the defunct corporation in its entirety and denied petitions for rehearing thereon.

It also is apparent that all of the judges participating in the adjudications and all the parties (except the attorneys for the defunct corporation) were ignorant of the fact that they were charged with notice of the Congressional enactment of its dissolution. As for the attorneys for the defunct corporation, they frankly admit they were aware that they purported to act for the defunct corporation.

The act dissolving the Defense Supplies Corporation, June 30, 1945, Chap. 215 Public Law 109, 59 Stat. 310, 15 U.S.C.A. § 601 note, provides that, "notwithstanding any other provision of law, all functions [of the dissolved corporation] * * * are hereby transferred * * * to Reconstruction Finance Corporation and *shall be* performed, exercised and administered by that Corporation * * *."

That is to say that after July 1, 1945, the Reconstruction Finance Corporation *"shall"* file the final brief in the existing trial due after July 1, 1945, "shall" take the appeal from any adverse decision and "shall" defend in this Court any judgment favorable to it. The word "shall" is "the language of command" used in the statute in contrast to the "may" of the judges' power to allow intervention. Anderson v. Yungkau, 329 U.S. 482, 485, 67 S.Ct. 428, 430.

The construction of the Reconstruction Finance Corporation is, in effect, that this "shall" is not mandatory and that it need not do these things; that it may choose an alternative, namely, that lawyers formerly representing the defunct corporation may pretend it is still existing and in its name continue the trial by filing a brief and procure a judgment in favor of a non-existent party.

The dissolving act further provides that: "No suit, action, or other proceeding lawfully commenced by or against any of such corporations shall abate by reason of the enactment of this joint resolution, but the court, on motion or supplemental petition filed any time within twelve months after the date of such enactment, showing a necessity for the survival of such suit, action, or other proceeding to obtain a determination of the questions involved, may allow the same to be maintained by or against the Reconstruction Finance Corporation."

The Reconstruction Finance Corporation contends that it is not bound by this provision for maintaining the action and presents no petition to the Court with the required showing. Rather, they contend they are entitled to treat the recent specific Congressional act as subordinate to 28 U.S.C. 777, 28 U.S.C.A. § 777, providing that any court, including the Appellate Court, shall not abate any proceeding or reverse any judgment for a "defect * * * of form." The statute concludes the Court "may at any time permit either of the parties to amend any defect in the process or pleadings, upon such conditions as it shall, in its discretion and by its rules, prescribe."

This the Reconstruction Finance Corporation's brief would interpret as permitting us to disregard "defects of form and procedure." So interpreted, we could disregard a "defect of procedure" on appeal consisting of filing a notice of appeal four months after the judgment was entered in the District Court.

The Reconstruction Finance Corporation also contends that its failure to follow the mandate of the statute that it "shall" exercise the functions of the non-existent dissolved corporation is a mere "defect * * * of form." That is to say, the failure to supply any litigant at all over which the Court has jurisdiction to render a judgment is not a jurisdictional defect, but a mere defect of form. As seen infra, the Supreme Court in Payne v. Industrial Board, 258 U.S. 613, 42 S.Ct. 462, 66 L.Ed. 790, holds the defect to be a "want of jurisdiction."

The Reconstruction Finance Corporation cites our decision in Reardon v. Balaklala Consol. Copper Co., C. C., 193 F. 189, a case brought in the California District Court on diversity of citizenship. There the Court held valid a suit commenced by the father of the deceased, under a California statute allowing a suit by the personal representative of a deceased employee. No question of substitution of the personal representative was discussed and it was assumed that the father under the California law had the right to bring the action.

■ We do not agree that the failure of Reconstruction Finance Corporation to appear and give a jurisdiction in personam for a judgment and thereafter perform the functions of its statutory mandate is a mere "defect * * * of form" within Sec. 777 and deny the motion to substitute the Reconstruction Finance Corporation as judgment creditor, or as a party to the appeal.

## The Motion of the Lawrence Warehouse Company et al.

The appellants from the judgment, Lawrence Warehouse Company et al. contend that the Reconstruction Finance Corporation cannot now be substituted as a party to the action as at any period of its pendency and move the court to set aside its affirmation of the judgment and remand the case to the District Court with instructions to dismiss.

Appellants' contention is not only that the judgment and its affirmance are acts in vacuo because in favor of a non-existent party but also the functions which the Reconstruction Finance Corporation shall perform are limited in time to the twelve months' period within which it must file a motion, "showing a necessity for the survival of such suit, action or other proceeding to obtain a determination of the questions involved," in which event the court "may allow the same to be maintained by or against the Reconstruction Finance Corporation."

■ It is apparent that if now, two years and seven months after the dissolution of the Defense Supplies Corporation, the Reconstruction Finance Corporation shall perform the former's function, the twelve month period of the statute is made meaningless, in violation of the cardinal rule of a construction of a statute that its words shall be given effect and not made nugatory. It seems impossible that Congress meant to say, "You can intervene and make the showing we require any time you please, but it would be nicer if you would do it within twelve months."

■ Emphasis is placed on the fact that a government agency may lose its valuable right of action if the dissolving act is construed adversely to it. As shown, infra, it is not true that by dismissal of the action here the right of action is lost to the government. The right of action here survives, though, as shown, the Supreme Court holds that the action against the dissolved corporation is "abated." Fix v. Philadelphia Barge Co., infra.

The act is not a one-way street. If the suit were against the governmental agency by a private litigant who had obtained judgment, we well could expect the argument that the statute was one for the protection of that agency and that Congress intended so to protect it, as shown, infra, by the Supreme Court decision holding non-compliance by the private suitor abated the action and caused the court to lose its jurisdiction over it.

Stress is laid on the statute's provision that no "action * * * by or against [the dissolved corporation] shall *abate* by reason of" its enactment. However, the Supreme Court has held of a statute, 28 U.S.C.A. § 780, identical in its provisions concerning abatement and substitution and providing that no action against a federal officer "shall *abate* by reason of his death, or expiration of his term of office," etc., that it is abated if his successor does not seek substitution within the twelve months' limitation provided for such procedure. The identity of the provisions of the Act of Congress of February 8, 1899, 28 U.S.C.A. § 780, with the instant dissolving act appears in the words of the two statutes. The 1945 act provides first that "Notwithstanding any other provision of law, *all functions, powers, duties,* and *authority* of the corporations hereinafter designated, are hereby transferred, * * * to Reconstruction Finance Corporation and *shall be performed,* * * * by that Corporation in the same manner and to the same extent and effect as if originally vested in Reconstruction Finance Corporation, and the designated corporations are hereby dissolved: * * * Sec. 2. The Reconstruction Finance Corporation *shall* assume and be subject to all liabilities, whether arising out of contract or otherwise, of the corporations dissolved by this joint resolution." (Emphasis supplied.)

Then follow the parallel provisions, the italicized portions showing the identity:

| | |
|---|---|
| "*No suit,* action, or other proceeding lawfully commenced by or against any of such corporations *shall abate by reason of* the enactment of this joint resolution, *but the court, on motion or supplemental petition filed at any time within twelve months after the date of such enactment, showing a necessity for the sur-* | "That *no suit,* action, or other proceeding lawfully commenced by or against * * * officer of the United States * * *, *shall abate* by reason of his death, or expiration of his term of office, * * * but, in such event, *the Court, on motion or supplemental petition filed, at any time within twelve* |

*vival of such suit,* * * * *to obtain a determination of the questions involved, may allow the same to be maintained by or against* the Reconstruction Finance Corporation."

In the instant act, the words "Reconstruction Finance Corporation" are substituted for the words "his successor in office." It is thus seen that Congress copied the words of its prior statute. The specific provisions of the 1945 act control those of the prior Federal Rules Civil Procedure, rule 25(c), 28 U.S.C.A. following section 723c.

The questions whether an application for substitution to maintain the action could be made after the twelve months' period came before the Supreme Court on this identical statute in the case of LeCrone v. McAdoo, 253 U.S. 217, 40 S.Ct. 510, 64 L.Ed. 869. There, as here, the action seeking a mandamus against the Secretary of the Treasury had been decided by the District Court, its decision affirmed by the Court of Appeals, and was before the Supreme Court on a writ of error. That court dismissed the writ of error, holding at page 219 of 253 U.S., at page 511 of 40 S.Ct., "But we cannot consider that question or the other arguments upon the merits of the case, because Mr. McAdoo having resigned the office of Secretary of the Treasury, his successor was not substituted within twelve months; which is the limit for such substitution fixed by the Act of February 8, 1899, c. 121, 30 Stat. 822."

*months thereafter, showing a necessity for the survival thereof to obtain a settlement of the questions involved, may allow the same to be maintained by or against* his successor in office, and the Court may make such order as shall be equitable for the payment of costs."

While holding, though not expressly, that the failure of the successor litigant to appear created an absence of jurisdiction to proceed with the action, the court, relying on LeCrone v. McAdoo, expressly so held in the succeeding decision on the same statute of 1899, John Barton Payne v. Industrial Board of Illinois, 258 U.S. 613, 42 S.Ct. 462, 66 L.Ed. 790. There Payne was litigating in performance of his federal func-

tion as a United States officer, director of railways. He had resigned more than twelve months before the dismissal was sought. The court in its Per Curiam stated that the writ of error is "dismissed for *want of jurisdiction.* Act of February 8, 1899, c. 121, 30 Stat. 822 * * *; Le Crone v. McAdoo, 253 U.S. 217, 219, 40 S.Ct. 510, 64 L.Ed. 869." (Emphasis supplied.)

It is thus apparent that the provision that the cause of action shall not abate means that the action is still pending but that the court lacks "jurisdiction" to consider it in the absence of a substitution in the period of twelve months.

Here is not a mere statute of limitation. Here is a statute which provides that after the twelve months' period the court loses jurisdiction to consider it. It is elementary that absence of such jurisdiction cannot be waived or jurisdiction conferred by consent. Mitchell v. Maurer, 293 U.S. 237, 244, 55 S.Ct. 162, 79 L.Ed. 338; City of Gainesville v. Brown-Crummer Inv. Co., 277 U.S. 54, 59, 48 S.Ct. 454, 72 L.Ed. 781; Ross v. White, 6 Cir., 32 F.2d 750, (filing briefs does not create jurisdiction).

In 1925, Congress amended the Act of 1899 reducing the period of substitution to six months, 28 U.S.C. 780, 28 U.S.C.A. § 780. It provided that, "where, during the pendency of an action * * * [against an officer] relating to the present or future discharge of his official duties, such officer dies, resigns, or otherwise ceases to hold such office, it shall be competent for the court wherein the action, suit, or proceeding is pending, whether the court be one of first instance or an appellate tribunal, to *permit the cause to be continued* and maintained by or against the successor in office of such officer, if within six months after his death or separation from the office it be satisfactorily shown to the court that there is a substantial need for so continuing and maintaining the cause and obtaining an adjudication of the questions involved." (Emphasis supplied.)

The words that "it shall be competent for the court * * * to permit the cause to be continued and maintained" obviously are the equivalent of the words of the statute of 1899 that the action shall not "abate".

In the following cases the Supreme Court and Courts of Appeal have dismissed where the substitution of the official litigant is not made in the six months.

In the United States ex rel. Claussen v. Curran, Commissioner, 276 U.S. 590, 48 S.Ct. 206, 72 L.Ed. 720, the Supreme Court stated:

"January 9, 1928. * * * Per Curiam. In this case the order of the District Court dismissing the writ of habeas corpus was entered on February 1, 1926; an appeal was allowed on February 9, 1926; to the Circuit Court of Appeals for the Second Circuit, which court, on December 14, 1926, entered a judgment affirming that of the District Court. A writ of Certiorari was granted by this Court on March 7, 1927. * * *

"It appearing that Henry H. Curran, sued herein as Commissioner of Immigration resigned such office on March 31, 1926, and was succeeded by Benjamin M. Day, who now holds that office, and that no motion was made under section 11 of the Act of February 13, 1925 (chap. 229, 43 Stat. at L. 936, 941, [8 U.S.C.A. § 780]), asking the court to 'permit the cause to be continued and maintained by or against the successor in office of such officer,' and that the six-months' period, within which such a motion could have been made, has expired, the Court now vacates the judgments entered in the District Court and in the Circuit Court of Appeals and remands the cause to the District Court, with a direction to dismiss the *cause as abated.*" (Emphasis supplied)

It is thus seen that under Sec. 780, as under the Act of 1899, the action is not abated by the absence of the federal litigant, but that it does abate at the end of the limitation period because of the failure of the successor federal litigant to be substituted in the action. That is to say, while the mere dissolution does not abate the action, it is abated after the period fixed for the appearance of the successor litigant.

It is pertinent here that in United States v. Curran, where both litigants were federal, the resignation took place *after* judgment in the trial court and during the course of appeal; that the six months' time for substitution expired on September 30,

1926, before the Court of Appeals on December 24, 1926, affirmed; and that the question of the failure to substitute was first suggested to the Supreme Court after the Writ of Certiorari was granted.

■ Here is answered the contention of Reconstruction Finance Corporation that the delay of the appellants to move to raise the jurisdictional question has created jurisdiction by waiver. There the successor in office moving for dismissal was charged with knowledge of the resignation of his predecessor, just as here the moving parties had knowledge of the statute of June 30, 1945. There, just as it is claimed under our present rules of civil procedure, either party could have moved in the Circuit Court of Appeals for a substitution of the officer litigant, so here either could have moved for such a substitution in the District Court or in this Court.

There, as here, the opposing party could not move for a dismissal till the case reached the court of appeal, because the period of limitation expired after the appeal was taken. There, as here, the motion to dismiss could have been made before the decision of the court of appeal or after, but was delayed till in the Supreme Court.*

The Court of Appeals of the District of Columbia, in dismissing under § 780, relies on the decisions in the LeCrone and Curran cases decided under the Act of 1899.' Black Clawson Co. v. Robertson et al., 63 App.D.C. 236, 71 F.2d 536. Likewise, following these earlier Supreme Court decisions are the district court decisions in Martin v. Coe, 65 App.D.C. 349, 83 F.2d 606; Kuttroff v. Sutherland, D.C., 49 F2d 944; Bowles v. Ohlhausen, D.C., 71 F.Supp. 199.

In Fix, Collector of Internal Revenue, v. Philadelphia Barge Co., 290 U.S. 530, 54 S.Ct. 270, 271, 78 L.Ed. 481, there had been a suit in assumpsit for federal taxes brought by collector McCaughn, Fix's predecessor in office. It was dismissed on a showing that McCaughn had ceased to be collector and no substitution made in the six months' period provided in 28 U.S.C. 780, 28 U.S.C.A. § 780. It was contended that Fix's later suit for the same tax liability was barred by the dismissal of McCaughn's suit. The Supreme Court held to the contrary, stating of the act of 1899 as amended in 1925:

"The act is purely remedial, designed to remove what this court in the Butterworth case called an "inconvenience." Failure to comply with the statute *forecloses the particular remedy therein provided;* it does not destroy the right. There is a clear difference between the action and the *cause* of action. *Revival of the action is necessary* because that does not survive the death or resignation of the officer by or against whom it has been brought; but the cause of action may survive, depending upon its nature and the applicable rule." (Italics supplied)

That is to say of the Act of 1925, using the exact words of the instant statute, the appearance within the limited period of the substitute officer, as here the Defense Supplies Corporation, creates a "revival of the action." If the "action" is not so revived, the court loses jurisdiction to consider it but the "cause of action" nevertheless remains to be litigated by the successor in a new action.

■ Here is answered the contention that the Defense Supplies Corporation will have lost its right of action against the appellants by its failure to appear in the limited period. On the contrary, after the twelve months it could have begun a new suit against appellants. That it now may have lost that right to sue by some statute of limitation is no more relevant here than it would have been to the holding in the Fix case.

So, also, the Fix case answers the contention, much urged, that the United States, owning the stock of the Defense Supplies Corporation, is the real party in interest in a recovery of damages against appellants. In that sense so was the United States, with its Collector Fix suing for taxes for the federal treasury in his "official capacity" as tax collector.

However, we do not agree that the United States is the real party litigant where the Reconstruction Finance Corporation is sued

---

* It is not necessary to distinguish the cited New Jersey case of Matthison v. Payne, 98 N.J.L. 383, 119 A. 771, since if not distinguishable it cannot overrule the LeCrone and other cases.

or being sued. That is to say, that in all the scores of suits against that corporation, the complaint need not make it the defendant but may be brought against the United States alone, with a mere allegation that the corporation is its agent.

The case of Fleming v. Goodwin, 8 Cir., 165 F.2d 334, 338, cited by the Finance Corporation, expressly distinguished Rule 25(d), the successor to the Act of 1899, on the ground that the Price Control Administrator was authorized "by § 205(e) of the Emergency Price Control Act [50 U.S.C.A. Appendix, § 925(e)] to bring the action 'on behalf of the United States.' He was not authorized to bring it on his own behalf. * * *" So also, United States v. Koike, 9 Cir., 164 F.2d 155, 157. The Administrator there is a mere use plaintiff for the United States. Here the Reconstruction Finance Corporation sues on its own corporate behalf and not as use plaintiff for the United States.

We are not in accord with the decision of the Eighth Circuit of March 25, 1948, in Gaynor v. Metals Reserve Company, 166 F.2d 1011. The opinion there does not mention the McAdoo, Payne, Claussen or Fix cases. Passing on the statutory provisions identical with the Acts of 1899 and 1925, it treats the granting of the motion to dismiss as "the repudiation of a just debt" and that thereby the liability would be "extinguished twelve months after the enactment of Public Law No. 109," though the Fix case shows the contrary. It relies on the dictum of the Oklahoma Natural Gas Co., considered infra, construing a different *state* statute, a decision before both the Claussen and Fix cases. It nowhere considers the Supreme Court's holdings that the court loses jurisdiction of the action commenced by the later defunct corporation and the action abates by non-appearance of the successor litigant, though the *cause of action* survives. It does not consider the statute's mandatory "shall" for the performance of the "function" of the successor litigant.

It is contended that the case of Anderson v. Yungkau, 329 U.S. 482, 67 S.Ct. 428, 429, overrules, sub silentio, the holdings in the LeCrone, Payne and Curran cases followed by the Court of Appeals and the District Courts, that the language used in the statutes there, identical with the Act of June 30, 1945, created a statute of limitation. In that case, the court was considering Rule 25(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, providing:

"If a party dies and the claim is not thereby extinguished the court within 2 years after the death *may order* substitution of the proper parties. If substitution is not so made, the action *shall be dismissed* as to the deceased party." (Emphasis supplied)

This rule is confined to successor human litigants not to corporations. The court held that 25(a) creates a statute of limitation and that one could not extend the limited period by a showing of excusable neglect under Rule 6(b). In the course of the discussion, the court states:

"There would be more force in petitioner's argument if Rule 25(a) had, without more, set a two-year period within which substitution might be made. But Rule 25(a) does not stop there. It directs the court to dismiss the action if substitution has not been made within that time. That is action required of the court, not of a party. And Rule 6(b) should not be construed to override an express direction of action to be taken by the court. See Wallace v. United States, 2 Cir., 142 F.2d 240, 244."

While we do not know what the court would have decided if the mandatory words "shall be dismissed" were not used, the statute of June 30, 1945, contains the mandate that whatever may be done after the dissolution of the Defense Supplies Corporation "shall" be done by the successor corporation, which we interpret to mean shall be done in the time limited. As stated of the Act of 1899, which is the predecessor of Rule 25(a), the time limit of the rule is meaningless if the substitution may be made after the limitation period has expired. The Statute of 1899 is without the words "the action shall be dismissed" nevertheless, the LeCrone, Payne and Curran cases hold that the action must, that is "shall," be dismissed after the period of limitation, and this al-

though that act also states that no such action "shall abate," as Rule 25(a) provides that such action "shall continue." The phrase "shall be dismissed" of the rule is but the embodying of the Supreme Court's construction of its predecessor's statute.

It is also contended that the preceding LeCrone and Payne cases are overruled, without mentioning them, by the Supreme Court's opinion in Oklahoma Natural Gas Co. v. Oklahoma, 273 U.S. 257, 47 S.Ct. 391, 71 L.Ed. 634, on writ of error from the Supreme Court of Oklahoma. The contention ignores the fact that Claussen v. Curran was decided in 276 U.S., 590, 48 S.Ct. 206, 72 L.Ed. 720, a year later, and Fix v. Philadelphia Barge Co., in 290 U.S. 530, 54 S.Ct. 270, 78 L.Ed. 481, seven years later. The gas company had been dissolved and the district judge had the option to choose a representative to settle its affairs or to appoint its director or managers who "may" perform the function "to maintain or defend actions" for the dissolved corporation. The statute concluded with the words "and no action whereto any *such* corporation is a party shall abate by reason of such dissolution." 18 O.S. 1941 § 163. A successor corporation formed under the laws of Delaware moved to be substituted. The motion was denied, but in the discussion concerning "such" a corporation, the Court stated [273 U.S. 257, 47 S.Ct. 392]:

"We have found no Oklahoma case that construes this provision with reference to the question now before the court. The language of the section would seem to indicate that as there is to be no abatement the Oklahoma Natural Gas Company for litigating purposes is still in being and continues to be a party before this court."

The Defense Supplies Corporation was not "such" a corporation. It was a corporation dissolved, of which the Court in the Oklahoma gas company case states:

"There is no specific provision in our rules for the substitution as a party litigant of a successor to a dissolved corporation. It is well settled that at common law and in the federal jurisdiction a corporation which has been dissolved is as if it did not exist, and the result of the dissolution can not be distinguished from the death of a natural person in its effect. Mumma v. Potomac Company, 8 Pet. 281, 8 L.Ed. 945; National Bank v. Colby, 21 Wall. 609, 22 L.Ed. 687; Pendleton v. Russell, 144 U.S. 640, 12 S.Ct. 743, 36 L.Ed. 574. * * * It follows, therefore, that as the death of the natural person abates all pending litigation to which such a person is a party, dissolution of a corporation at common law, abates all litigation in which the corporation is appearing either as plaintiff or defendant. To allow actions to continue would be to continue the existence of the corporation *pro hac vice*. But corporations exist for specific purposes, and only by legislative act, so that if the life of the corporation is to continue even only for litigating purposes it is necessary that there should be some statutory authority for the prolongation. The matter is *really not procedural or controlled by the rules of the court in which the litigation pends*. It concerns the fundamental law of the corporation enacted by the state which brought the corporation into being." (Emphasis supplied)

The Defense Supplies Corporation created by Congress differed from Oklahoma corporation in that, instead of having several successors to be chosen by the court, there is but one which "shall" perform the function "to maintain or defend" suits against the dissolved corporation. The Oklahoma statute has no time limitation within which to be substituted, while the Congressional act has such a limitation after which time the Supreme Court has held of an identical provision that "the action shall not abate," that it does "abate" after the time period and that the court loses "jurisdiction" to consider it.

We do not think that the court's remarks concerning the Oklahoma statute overrule the LeCrone and Payne decisions. This is clear from the later decision of Claussen v. Curran. We hold that these cases determine the interpretations of the Act of June 30, 1945. The motion of the Reconstruction Finance Corporation for substitution is denied. The motion of Lawrence Warehouse Company et al. is granted and we order set aside our judg-

208

ment of affirmance of December 5, 1947, and the judgment of the District Court and remand the case to the District Court with instruction to enter an order dismissing the action.

Action ordered dismissed.

HEALY, Circuit Judge (dissenting).

The majority it seems to me have reached an unconscionable result on the basis of insubstantial and purely technical considerations. The statute does not justify, much less compel, the result. It has been arrived at by treating as an insuperable jurisdictional obstacle what ought, at most, be regarded as a procedural omission of no substantial prejudice to any party.

The pending controversy was initiated by motion of appellants Lawrence Warehouse Company and Capitol Chevrolet to vacate our affirmance of the judgment against them, Lawrence Warehouse Co. et al. v. Defense Supplies Corp., 9 Cir., 164 F.2d 773, and to remand the cause to the district court with instructions to dismiss, the ground of their motion being that when the judgment was entered against them in the district court that court was without jurisdiction to render it. Since the merits of the motion can not intelligibly be considered unless one has in mind the sequence of events leading up to the entry of the judgment, I summarize these happenings in the order of their occurrence.

In February of 1944 Defense Supplies Corporation began this suit, which was for damages for the allegedly negligent destruction by fire of a quantity of tires stored in appellants' warehouse. On February 13, 14, and 15, 1945, the case was tried to the court sitting without a jury. On January 9, 1946, the court announced a decision in favor of Defense Supplies holding it entitled to damages of approximately $42,000. On April 15, 1946, final judgment to this effect was entered. In the interim between the trial of the case and its decision Congress passed the Joint Resolution of June 30, 1945, Public Law 109, 59 Stat. 310, effective July 1, 1945, 15 U.S.C.A. § 601 note, dissolving certain governmental corporations, including De-

fense Supplies, and transferring their assets and liabilities to the Reconstruction Finance Corporation by which they had been set up in the first instance. The Resolution in its entirety is as follows:

"Notwithstanding any other provision of law, all functions, powers, duties, and authority of the corporations hereinafter designated, are hereby transferred, together with all their documents, books of account, records, assets, and liabilities of every kind and nature, to Reconstruction Finance Corporation and shall be performed, exercised, and administered by that Corporation in the same manner and to the same extent and effect as if originally vested in Reconstruction Finance Corporation, and the designated corporations are hereby dissolved: Defense Plant Corporation, Metals Reserve Company, Rubber Reserve Company, and Defense Supplies Corporation, created by Reconstruction Finance Corporation pursuant to the Act of June 25, 1940 (54 Stat. 572), and Disaster Loan Corporation, created by the Act of February 11, 1937 (50 Stat. 19 [15 U.S.C.A. § 605k—1]), are hereby designated as the corporations to which this joint resolution applies.

"Sec. 2. The Reconstruction Finance Corporation shall assume and be subject to all liabilities, whether arising out of contract or otherwise, of the corporations dissolved by this joint resolution. No suit, action, or other proceeding lawfully commenced by or against any of such corporations shall abate by reason of the enactment of this joint resolution, but the court, on motion or supplemental petition filed at any time within twelve months after the date of such enactment, showing a necessity for the survival of such suit, action, or other proceeding to obtain a determination of the questions involved, may allow the same to be maintained by or against the Reconstruction Finance Corporation.

"Sec. 3. This joint resolution shall take effect on July 1, 1945."

We have here a suit which had been completely tried prior to the resolution's enactment, and it remained only for the court to reach a decision. Assuming that

the point has importance, it is to be noted that as of the date of the entry of the judgment the twelve months' period prescribed in § 2 had not expired. It was thus undoubtedly within the authority of the court, preliminary to judgment, to order the substitution of the Reconstruction Finance Corporation. So much is conceded by counsel for appellants and possibly by my colleagues, although the latters' view of the matter is not clearly determinable. But the provisions of § 1 of the statute, transferring to Reconstruction Finance all assets of the dissolved corporations, requires us to go further and hold that as of the time of the judgment Reconstruction Finance, had it or the Defense Supplies Corporation so moved, was entitled to be substituted unconditionally as a matter of right.

With the latter proposition my associates are in obvious disagreement. They stress the language of § 2 providing that at any time within twelve months the court, on a showing of necessity for the survival of the suit or other proceeding "to obtain a determination of the questions involved," may allow it to be maintained by or against Reconstruction Finance Corporation. They say or imply that a showing of necessity for survival was imperative, that it was not made, and that if it had been the court possessed discretionary power to grant or deny substitution. For reasons already given and others now to be stated I regard the view as untenable on all counts.

It will be apparent on a moment's reflection that the provision stressed by my associates can not rationally be applied to a case like this and was not intended to be. The questions involved in the suit were the familiar ones arising in all cases of like character. They were whether negligence on the part of the defendants had caused or contributed to the property loss sustained by the government, and if so, the amount in money of the recoverable loss. This being an ordinary tort action where the plaintiff's right to damages had vested, the continuing necessity for the determination of the questions at issue would seem to be apparent on the face of the pleading. And, if this were not so, the necessity for their determination had

already been amply demonstrated in the course of the trial. No additional showing of necessity was possible, and no reason existed for attempting to make one unless, indeed, it were permissible to think that the government no longer needed to be compensated for its loss.

It is an accepted canon of construction that a statute is not to be construed as requiring a vain thing. I may add that the clause under consideration, while not germane to the situation before us, doubtless has its uses. It appears to have been lifted from the existing statute having to do with the survival of suits against public officers in relation to the discharge of their official duties. In incorporating it into the resolution Congress would seem to have had in mind the possible existence of special circumstances where a change in conditions, such as the lapse of emergency legislation or the like, might have made decision of the points at issue of no more than academic interest, or rendered futile or inappropriate the grant of the relief sought. Compare Fleming v. Mohawk Wrecking & Lumber Co., 331 U.S. 111, 119, 67 S.Ct. 1129. The corporations dissolved, it is to be noted, had all been set up under emergency conditions.

The exposure of the inapplicability of this clause largely strips the jurisdictional holding of its plausibility, assuming that it had any to begin with, for we then have a case where the final step—the entry of judgment—was in no sense conditioned by the statute. But my associates' jurisdictional argument has other frailties. As I understand it, the premise on which they hold the judgment void is that there was before the court no party plaintiff in whose favor judgment could be rendered, Defense Supplies having for all purposes ceased to exist. The holding fails to give effect to another clause embraced in the section, namely the provision that no suit lawfully commenced by or against any of the dissolved corporations "shall abate by reason of the enactment of this joint resolution." Since pending actions were not to abate it would appear to have been the intent of Congress to extend the life of the dissolved corporation at least for the limited purpose of preserving its status as a party,

thus keeping the suit intact. Hence, in any view of the statute, there was no lack of a party plaintiff.[1]

The view I have expressed is in harmony with the interpretation given an analogous statute in Oklahoma Natural Gas Co. v. Oklahoma, 273 U.S. 257, 47 S. Ct. 391, 71 L.Ed. 634, in a carefully considered opinion written by Chief Justice Taft. That case had to do with a motion for substitution of a successor corporation for one that had been dissolved. The Court observed that, as the death of a natural person abates all pending litigation to which such person is a party, dissolution of a corporation, at common law, abates all litigation in which the corporation is appearing either as plaintiff or defendant. The Court went on to say that if the life of the corporation is to continue for litigating purposes there should be some statutory authority for its prolongation. Such authority was found in a local [Oklahoma] statute which made the directors of a dissolved corporation trustees of the creditors and stockholders, with full power to settle the corporate affairs. The statute concluded by providing that for such purposes the directors "may maintain or defend actions in their own names by the style of the trustees of such corporation dissolved, naming it; and no action whereto any such corporation is a party shall abate by reason of such dissolution." The Court said that "the language of the section would seem to indicate that as there is to be no abatement the Oklahoma Natural Gas Company [the dissolved corporation] for litigating purposes is still in being and continues to be a party before this court."

[273 U.S. 257, 47 S.Ct. 392.] The motion for substitution was denied in light of this statutory provision, apparently in the belief that there was no necessity for substitution.[2]

The Oklahoma Natural Gas Company case has immediate bearing on the legal and factual situation before us, and if its holding is to be accepted it vitiates entirely the jurisdictional argument. None of the cases cited by appellants or relied on by the majority presents a situation at all comparable with the present. One need not question either the soundness or the authority of those cases; they are simply not in point.

It is important to remember that the United States was at all times the real party in interest in this suit, that is to say, it was the real owner of the cause of action and its fruits. Southern Pac. Co. v. Reconstruction Finance Corporation, 9 Cir., 161 F.2d 56. Compare Fleming v. Goodwin, 8 Cir., 165 F.2d 334. This would, of course, be true whether judgment were rendered in favor of one or the other of the two corporations, since both Defense Supplies and Reconstruction Finance were mere creatures of the government.[3] The failure to substitute one for the other in no sense prejudiced appellants. The latter were, moreover, charged with knowledge of the joint resolution, and their sins of omission must be measured on the assumption of their knowledge, not of their ignorance, of its provisions. They interposed no objection to the entry of judgment in favor of the dissolved corporation, and must, I am satisfied, be held to have waived

---

[1] The Eighth Circuit, in Gaynor v. Metals Reserve Company, 166 F.2d 1011, decided March 25, 1948, reached a similar conclusion in a much more extreme situation than ours. Metals Reserve Company is one of the corporations dissolved by the resolution. It was a defendant in that case, having been sued in 1945 for sums claimed to be owing on contract and as damages. The cause was not brought on for trial prior to the enactment of the joint resolution, but was continued to the June 1947 term, at which time it was dismissed on motion of Metals Reserve on the basis of the joint resolution. The Circuit Court reversed on the basis of the provision of the resolution to the

effect that no pending suit against the dissolved corporations should abate.

[2] The reasoning of the opinion in the Oklahoma Natural Gas Co. case was followed in Chicago Title and Trust Co. v. Forty-One Thirty-Six Wilcox Building Corp., 302 U.S. 120, 58 S.Ct. 125, 82 L. Ed. 147.

[3] Consult 28 U.S.C.A. § 780a, enacted in 1933. This statute relates to actions to recover damages, brought by the United States or on its behalf. It shows a congressional policy requiring the survival of such actions in situations where they would ordinarily abate. This statute is of significance here.

the error, if error there was, in failing to order substitution.

The validity of the judgment is necessarily to be gauged as of the time of its entry. If valid then it would not be rendered void by lapse of time or in consequence of infirmities, if any, in the appellate proceedings which ensued. That Defense Supplies, for example, itself appealed —unsuccessfully, as it happened—from a phase of the judgment exonerating an individual defendant can be of no moment. The majority's emphasis of its conduct in this respect is on a parity with its emphasis of the inconsequential fact that counsel for Defense Supplies, who had conducted the trial, furnished their final brief in the trial court the day after the resolution's passage. Palpable red herrings both, I resign these circumstances and others like them to their peculiar office.

Appellants' motion should be denied. The motion of Reconstruction Finance Corporation for the amendment of the judgment by substituting its name as plaintiff in lieu of Defense Supplies was interposed as an alternative to its primary contention, namely, that the error, if any, in respect of the judgment was procedural only, and was waived by appellants' failure to object. For reasons already stated, I regard such an amendment as unnecessary. However we can and probably should grant the motion in the interest of ending further controversy. Compare Anderson v. Yungkau, 329 U.S. 482, 67 S.Ct. 428.